UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DEREK LURCH JR.,

                            Plaintiff,

            -against-                                    25-CV-0820 (KMW)

ANY AND ALL DOCTORS THAT GAVE                   ORDER OF DISMISSAL
THE ORDER TO FORCIBLY INJURE THE              WITH LEAVE TO REPLEAD
PLAINTIFF AND ANY STAFF THAT
ASSISTED; PETER MOGER, EMT; ALEX
TEO, EMT; MADELYN ESTEVEZ,

                            Defendants.

KIMBA M. WOOD, United States District Judge:

        Plaintiff, appearing *pro se*, brings this action alleging that Defendants violated his federal

constitutional rights.  He asserts claims arising from an incident on January 5, 2025, when staff

at Delta Manor Men's Shelter called emergency medical services, leading to Plaintiff's

involuntary hospitalization and forced medication.  By order dated February 3, 2025, the Court

granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of

fees.  For the reasons set forth below, the Court dismisses Plaintiff's complaint, with 30 days'

leave to replead.


                              **STANDARD OF REVIEW**

        The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following facts are drawn from the complaint and supplement to the complaint, which together are treated as the operative complaint. (ECF Nos. 1, 5.)[1] Plaintiff Derek Lurch is on parole and has been at the Delta Manor Men's Shelter ("Delta") since October 31, 2024. (ECF No. 5-1 at 23.) On January 5, 2025, Plaintiff asked another shelter resident to lower the volume of his music, as is required by shelter rules (the "incident"). (ECF 1 at 8.) The resident reported his interaction with Plaintiff to Delta Manor staff member "Jane Doe," who was identified in Plaintiff's subsequent pleadings as Madelyn Estevez.[2] (ECF No. 5 at 1.) During Estevez's conversation with Plaintiff about this, she allegedly said "tauntingly" that he could be

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation appear as in the complaint, unless noted otherwise.

[2] By order dated June 24, 2025, the Court substituted Estevez in the caption for Jane Doe; in addition, Peter Moger and Alex Teo were substituted for the Doe emergency medical technicians. (ECF 7.)

sent to the hospital for no reason at all, and she called police and emergency medical technicians (EMTs).  (ECF No. 1 at 8.)

When police officers and EMTs arrived, Plaintiff informed them that he is familiar with New York's Mental Hygiene Law § 9.41, and that he cannot be sent to the hospital for simply telling someone politely that they should turn down their music.  (*Id.*)  The EMTs initially stated that the plaintiff did not need to go to the hospital, but Estevez told the EMTs that it is the shelter's policy that once the authorities have been called, the resident must go to the hospital for evaluation.  (*Id.* at 9.) [3]  After speaking with Estevez, the EMT "changed his determination," and stated "sarcastically," that Plaintiff needed to go to the hospital because he was "not taking his medication."  (*Id.*)

Plaintiff protested, but police officers assisted the EMTs in unlawfully transporting Plaintiff to Saint Barnabas Hospital (SBH).  (*Id.*  at 9.)  Plaintiff contends that this was in violation of state law that requires that a dangerousness determination be made before an "involuntary seizure for purposes of hospitalization" can occur.  (*Id.*)  At the hospital, Plaintiff was handcuffed to a gurney and, even though Plaintiff alleges that he did not exhibit any threatening behavior, the attending psychiatrist directed that Plaintiff be forcibly injected with

---

[3] Plaintiff attaches Saint Barnabas Hospital medical records, which state the following:

> 34 y/o M pt with PMH of Bipolar Disorder presents to the ED from his shelter for a psych evaluation. Per EMS, shelter called as the pt was agitated, aggressive and acting erratic. Pt was threatening shelter staff stating that he is going to call people to shoot everyone up. Pt denies being on any psych medications, states that he was a long time ago in the past but currently is not on any meds. Shelter reported to EMS that the pt is supposed to be on medication is not compliant with the medications. Uncooperative in the trauma bay, difficult to verbally redirect.

(ECF 5-1 at 27.)

psychotropic medication against his will. (*Id.*) Plaintiff was discharged from SBH the following day, on January 6, 2025. (ECF No. 5-1 at 28.) On January 8, 2025, Plaintiff sought treatment at Jacobi Hospital for injuries from his repeated forcible injections.

Plaintiff brings this action against: (1) "any and all doctors [at SBH] who ordered the forcible injection of the plaintiff"; (2) staff at SBH who assisted with the injections; (3) EMTs , who have been identified as Peter Moger and Alex Teo from the FDNY; (4) unidentified police officers who assisted in transporting Plaintiff to SBH; and (5) Delta Manor employee Madelyn Estevez. Plaintiff seeks compensatory and punitive damages of $2 million from each individual defendant and entity.[4]

## DISCUSSION

### A.    Private Parties: Hospital and Shelter Employees

Plaintiff appears to assert that Defendants violated his rights under 42 U.S.C. §1983. A claim for relief under Section 1983 must allege facts showing that a defendant acting under the color of a state "statute, ordinance, regulation, custom or usage" (a "state actor"), violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48-49

---

[4] Plaintiff has brought many prior civil rights actions in this court that included allegations that he was wrongfully treated as an emotionally disturbed person (EDP). *See, e.g.*, *Lurch v. City of New York*, No. 25-CV-7416 (JLR) (S.D.N.Y.) (pending); *Lurch, Jr. v. NYCHHC*, No. 24-CV-8923 (LTS) (S.D.N.Y.) (action against Elmhurst Hospital and others transferred to the Eastern District of New York); *Lurch v. P.O. Pilgrim*, 1:23-CV-6727 (JGLC) (S.D.N.Y. May 7, 2025) (claims that plaintiff was seized and taken to Bellevue Hospital settled); *Lurch v. Doe*, No. 22-CV-4055 (JGK) (S.D.N.Y. May 14, 2024) (complaint alleging unlawful detention and transfer to Bellevue Hospital under N.Y. Mental Health Law § 9.41 settled); *Lurch v. John Doe Officers*, No. 22-CV-2324 (S.D.N.Y.) (motion to dismiss pending for action with claims of forced medication at Bellevue). Plaintiff has also brought actions unrelated to civil commitment, forced medication, or seizure on EDP grounds. *See, e.g.*, *Lurch v. City of New York*, No. 23-CV-5249 (S.D.N.Y. Apr. 1, 2025) (settled); *Lurch v. NYCHHC*, No. 21-CV-1567 (ALC) (S.D.N.Y. Jan. 17, 2023) (motion to dismiss granted).

(1988); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor.") (internal quotation marks and citation omitted, emphasis in original).

In analyzing whether a private entity is functioning as a state actor for the purpose of Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotation marks and citation omitted). The activity of a private entity may be considered state action: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker,* 457 U.S. 838).

Receiving public funds does not turn a private actor into state actor, and the actions of private contractors do not become government action simply because of a contractors'

engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. In other words, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

### 1.    Saint Barnabas Hospital Medical Staff

Here, Plaintiff sues medical personnel associated with SBH, a private hospital, for their conduct in involuntarily committing and forcibly medicating him. A private hospital and its staff are not state actors for their actions committing an individual to a psychiatric hospital and medicating that individual against the individual's will. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (concluding that, under Circuit precedent, "the forcible medication and hospitalization of [the plaintiff] by private health care providers [could not] be attributed to the state," even though hospital received federal funding and was highly regulated); *Doe v. Rosenberg,* 166 F.3d 507 (2d Cir. 1999) (involuntary hospitalization and medication was "not traditionally within the exclusive prerogative of the state," and the other tests for state action were also not satisfied); *Bryant v. Steele*, 93 F. Supp. 3d 80, 90 (E.D.N.Y. 2015) (in Section 1983 cases against health care professionals, involving involuntary commitment and forced medication in private hospitals, "district courts in this Circuit have found that none of the three tests for state action—'state compulsion,' 'public function,' and 'close nexus'—were satisfied").

Because medical staff at SBH were not functioning as state actors in hospitalizing and medicating Plaintiff against his will, he does not state a claim against them under Section 1983 for a violation of his constitutional rights. The Court therefore dismisses Plaintiff's Section 1983 claims against "any and all doctors that gave the order to forcibly injure the plaintiff and any staff that assisted." 28 U.S.C. § 1915(e)(2)(B)(ii).

2.    **Delta Manor Shelter Employee**

Plaintiff also brings claims against a Delta Manor Shelter employee, Madelyn Estevez, who contacted EMTs about Plaintiff.  Delta Manor Shelter, operated by Center for Urban Community Services, is a private entity, and its staff are not employed by the government.

District courts within this Circuit have routinely concluded that providing shelter does not render a private entity or its employees state actors.  *See*, *e.g.*, *Williams v. B.R.C. of New York*, No. 25-CV-0663, 2025 WL 446237, at *2 (E.D.N.Y. Feb. 10, 2025) (holding that "[t]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors."); *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995, 2020 WL 1043305, *4 (E.D.N.Y. Mar. 4, 2020) (holding that "the provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors"); *Reaves v. Dep't of Veterans Affs.*, No. 08-CV-1624, 2009 WL 35074, at *3 (E.D.N.Y. Jan. 14. 2009) (holding that the plaintiff "cannot show that the shelter or the organization are performing a public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability.")

Defendant Estevez's challenged actions – contacting emergency services for a mental health evaluation for Plaintiff – are also not fairly attributable to the state.  Seeking police assistance or furnishing information to law enforcement authorities, who then exercise their own judgment, does not give rise to liability on the part of a private party for false arrest, even if the information later proves to be false.  *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 312 (S.D.N.Y. 2005) (addressing state law false arrest claim); *De Ratafia v. Cnty. of Columbia*, No. 13-CV-174, 2013 WL 5423871, at *14 (N.D.N.Y. Sept. 26, 2013) ("[P]roviding false

information to the police does not alone make a private individual a state actor for the purposes of § 1983. . . . To support a § 1983 claim against a private actor, plaintiffs must also plead bad faith on the defendant's part.'").

Plaintiff alleges that Estevez informed NYPD and the EMTs of the incident with another resident at the shelter and that Plaintiff was not taking his medication. Although Plaintiff also alleges that Estevez's tone of voice was "taunting" when she said to him that he could be sent to the hospital even if nothing had occurred, the FDNY EMTs exercised their own judgment about whether to transport Plaintiff to SBH. Accordingly, this allegation is insufficient to plausibly allege bad faith on Estevez's part that would suffice to hold a private party liable for false arrest. She was a private party not acting under the color of state law. As such, Plaintiff's Section 1983 claims against Estevez must be dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    Fourth Amendment Claims Against Doe Officers and FDMY EMTs**

The Fourth Amendment protects individuals against unreasonable searches and seizures by state actors, including where the seizure is due to an individual's mental illness. *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) ("[Fourth Amendment] protection adheres whether the seizure is for purposes of law enforcement or due to an individual's mental illness.") Decisions to seize a person are evaluated under the Fourth Amendment's reasonableness standard: a forcible detention is privileged where there was probable cause to believe that the individual was a danger to himself or others. *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001) (citing *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993)); *Guan v. City of New York,* 37

F.4th 797, 805 (2d Cir. 2022) ("[F]or a mental health arrest, police officers must have reasonable grounds for believing that the person seized is dangerous to herself or others.").[5]

A showing of probable cause in the mental health seizure context requires only a probability or substantial charge of dangerous behavior, not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (Forrest, J.); *Bryant v. Steele*, 462 F. Supp. 3d 249, 260 (E.D.N.Y. 2020) (for a mental health seizure, the law requires only "a probability or substantial chance of dangerous behavior, not an actual showing of such behavior") (citation omitted); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 505 (S.D.N.Y. 2015) (Sweet, J.) (explaining that a "[l]ikelihood of serious harm can be evidenced by overt acts, attempts or threats of harm, or by 'other conduct' such as neglect or refusal to care for oneself"). However, a "person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others." *Myers*, 819 F.3d at 634; *see also Todd v. New York City Health & Hosps. Corp.*, No. 16-CV-2124, 2021 WL 1238822, at *4 (E.D.N.Y. Mar. 31, 2021) (standard for involuntary mental health seizure "is not met by evidence suggesting merely that the person is emotionally disturbed, mentally unwell, paranoid, or espousing conspiracy theories")

Whether or not probable cause exists may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Barkai v. Mendez*, No. 21-CV-4050, 2024 WL 811561, at *15 (S.D.N.Y. Feb. 21, 2024) (Karas, J.) (probable cause exists where an officer receives a credible report of an individual displaying "erratic or non-responsive behavior"). Moreover, the "officer need not

---

[5] *See also* N.Y. Mental Hyg. Law § 9.41 ("[A] police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.").

have knowledge of the underlying facts establishing probable cause to make an independent determination of whether probable cause exists—it is enough that the [detaining] officer be told that there is probable cause." *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987) ("The determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other.")

Here, Plaintiff brings Fourth Amendment claims against NYPD Officers and Fire Department of New York (FDNY) EMTS.  He alleges that one of the NYPD officers acknowledged that he was correct that he could not be sent to the hospital without meeting the requirements of Mental Hygiene Law § 9.41 but stated that the decision about whether Plaintiff met those requirements would be determined by the EMTs rather than the NYPD officers.  (ECF No.1 at 8.).  Although the EMTs initially stated that Plaintiff did not need to go to the hospital, after consulting with Delta Manor Shelter staff, the EMT "changed his determination and said the plaintiff is not taking his medication . . . and needs to go to the hospital."  (*Id.* at 9.)  Although Plaintiff disputes that he is prescribed or taking medication, he acknowledges that the EMTs were told that he was not taking prescribed medication.

These undisputed facts as alleged in the complaint– that EMTs Moger and Teo relied on a report from shelter staff that Plaintiff was not taking his medication and on a report about his interaction with another shelter resident– sufficed for Defendants to reasonably conclude that there was a probability of dangerous behavior warranting evaluation at the hospital against Plaintiff's wishes.  Plaintiff's allegations thus do not show that  John Doe police officers or Defendants Moger and Teo violated his rights under the Fourth Amendment.  Plaintiff's Section 1983 claims for damages against Defendants Moger, Teo, and John Doe Police Officers are

therefore dismissed for failure to state a claim on which relief can be granted, with leave to replead.  28 U.S.C. § 1915(e)(2)(B)(ii).

**C.**    **State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (holding that once the district court has dismissed all claims over which it has original jurisdiction, "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court.").

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D.**    **Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Because Plaintiff may be able to

11

allege additional facts to state a valid claim, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant.  If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include:

a)  the names and titles of all relevant people;

b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c)  a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff's federal claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), and the Court declines to exercise supplemental jurisdiction of his state law claims.  Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above.

If Plaintiff chooses to file an amended complaint, it must be submitted to this Court's Pro Se Intake Unit within 30 days of the date of this order, be captioned as an "Amended

Complaint," and be labeled with docket number 25-CV-0820 (KMW). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff does not file an amended complaint, the Court will enter judgment dismissing the complaint for the reasons set forth in this order.

Plaintiff may agree to accept service of documents in this case by email, instead of regular mail, by completing the attached form, Consent to Electronic Service.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    October 14, 2025
          New York, New York

                                        /s/ Kimba M. Wood
                                        KIMBA M. WOOD
                                        United States District Judge

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.



-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

_____CV_____
(Include case number if one has been
assigned)


**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐  **Federal Question**

☐  **Diversity of Citizenship**

## A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.  If you checked Diversity of Citizenship

### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                          (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____
First Name                    Middle Initial        Last Name

_____
Street Address

_____
County, City                          State                  Zip Code

_____
Telephone Number                    Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: _____

First Name                           Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State                  Zip Code

Defendant 2: _____

First Name                           Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State                  Zip Code

Defendant 3: _____

First Name                           Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State                  Zip Code

Defendant 4:

_____

First Name                        Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                        State                        Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

| |
|---|
| Street Address |

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.